## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTHONY LEE BAISDEN,

    Petitioner,

v.

                                  CASE NO. 2:12-CV-11211
                                  HONORABLE MARIANNE O. BATTANI
                                  UNITED STATES DISTRICT COURT

PATRICIA L. CARUSO,

    Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Anthony Lee Baisden, ("Petitioner"), filed through his attorney Elizabeth L. Jacobs, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  In his application, petitioner challenges his conviction for one count of criminal sexual conduct, third degree, M.C.L.A. 750.520(d).  For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

---

[1] The Michigan Department of Corrections' Offender Tracking Information System (OTIS), which this Court is permitted to take judicial notice of, See Ward v. Wolfenbarger,323 F. Supp. 2d 818, 821, n. 3 (E.D. Mich. 2004), indicates that petitioner was discharged from his sentence on March 23, 2012, and is no longer in custody.  The language of §§ 2241(c)(3) and 2254(a) require that a habeas petitioner be "in custody":under the conviction or sentence under attack at the time that a habeas petition is filed in the federal court. See Maleng v. Cook, 490 U.S. 488, 490-91 (1989).  Whether a petitioner is in custody for purposes of the habeas corpus statute is determined at the time that the petition is filed. Sevier v. Turner, 742 F. 2d 262, 268 (6th Cir. 1984).  Because petitioner was still serving his sentence at the time he filed his petition, he satisfies the "in custody" requirement of §§ 2241(c)(3) and 2254(a), in spite of his subsequent discharge.  Once federal jurisdiction has attached to a habeas petition in federal district court, "it is not defeated by the release of the petitioner prior to completion of proceedings" on his or her habeas application. Carafas v. LaVallee, 391 U.S. 234, 238 (1968).

# I.  Background

Petitioner was convicted following a jury trial in the Wayne County Circuit

Court.  This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F. 3d 410, 413 (6th Cir. 2009):

> Defendant, an obstetrics and gynecology physician, was convicted of
> sexually assaulting the complainant after performing a gynecological
> examination.  The complainant, who had been defendant's patient for
> approximately two years, testified that after she appeared for her
> annual pelvic examination at the clinic where defendant was employed,
> she undressed, put on a hospital gown, then waited for defendant to
> enter the examination room.  According to the complainant, when
> defendant entered the room he greeted her by giving her a hug.
> Defendant then had her lie on the examination table, put her in stirrups,
> and started a breast examination.  The complainant testified that while
> performing the examination defendant hovered over and squeezed her
> breasts and nipples, which was different from prior breast examinations
> he had performed on her.
>
> At some point thereafter, defendant began a vaginal examination.
> Defendant inserted and removed a speculum, then performed an
> examination with his hands.  The complainant testified that defendant
> made comments such as "everything looks good," and "everything feels
> good," which she felt was not normal and made her nervous.
> Defendant then grabbed her thighs, pressed up against her, inserted
> his penis into her vagina, and ejaculated.  The complainant testified that
> she attempted to scoot back but that defendant put his arm around her
> waist and pulled her to him.  Defendant then grabbed her hands and
> attempted to kiss her.  The complainant testified that she never
> consented to having sex with defendant and that, after defendant was
> done, he asked her to give him another chance and told her they could
> meet elsewhere. Defendant then left the room and returned with a card
> with his number on the back.  After leaving the examination room, the
> complainant left the office area and went to the lobby, but then returned
> to the reception desk and asked to speak with a nurse about defendant.

The defense theory at trial was that defendant engaged in consensual sex with the complainant after the vaginal examination.  During his testimony, defendant explained that he and the complainant had developed a flirtatious relationship over the course of her several visits during the previous two years, and that the sexual contact between them that day was initiated by her at the conclusion of the vaginal examination and was entirely consensual.  Defendant further testified that, following the consensual sex act, the complainant jovially teased him because things happened too "quickly" and he thus asked her to meet him at a hotel to give him another chance, explaining that his wife and children were at his house so they could not go there.  At that point, defendant testified, the complainant's demeanor toward him changed and she said that she thought he was divorced.

People v. Baisden, Docket No. 269999; 2008 WL 582423, * 1 (Mich.Ct.App. March 4, 2008).

A majority of the Michigan Court of Appeals reversed petitioner's conviction, finding that the trial judge erred in instructing the jurors in accordance with M.C.L.A. 750.520(1)(f)(iv), which provides that force or coercion includes "[w]hen the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable."  The Michigan Court of Appeals found this subsection inapplicable because it applies "only where the pretense of medical necessity is used to gain consent to an otherwise offensive touching" and the evidence did not establish that the sexual act occurred while petitioner was engaging in a medical examination. Id. at * 4.  The Michigan Court of Appeals further held that the trial court erred in failing to grant a partial directed verdict, because no expert medical testimony had been presented to establish that petitioner's conduct was medically

3

unethical. Id. at * 5.  Because the Michigan Court of Appeals reversed on these claims, the Court declined to address petitioner's other claims. Id. at * 7.  Judge Meter issued a dissenting opinion, in which he not only dissented from the majority's ruling, but also addressed and rejected petitioner's remaining trial error claims.  Judge Meter indicated that the judge erred in departing above the sentencing guidelines and he would have thus ordered a re-sentencing. Id. at * 8-22.

In lieu of granting leave to appeal to the prosecutor, the Michigan Supreme Court reversed the Michigan Court of Appeals:

> On order of the Court, the application for leave to appeal the March 4, 2008 judgment of the Court of Appeals is considered and, pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals in part.  We agree with the trial court that MCL 750.520b(1)(f)(iv) is applicable here and that it is common knowledge that penile penetration constitutes an unethical and unacceptable method of "medical treatment."  Therefore, we overrule *People v. Capriccioso*, 207 Mich.App. 100, 105, 523 N.W.2d 846 (1994), and *People v. Thangavelu*, 96 Mich.App. 442, 450, 292 N.W.2d 227 (1980), to the extent that they state or hold that medical testimony is required in all prosecutions under MCL 750.520b(1)(f)(iv).  We further overrule those cases to the extent that they limit the application of the statute to situations in which the medical examination or treatment is used as a pretext to secure a patient's consent to sexual conduct.  That limited interpretation does not comport with the plain language of the statute.  The statute also applies to situations where nonconsensual sexual conduct is perpetrated during or in the context of medical treatment or examination. In a separate order, we are vacating the portion of the judgment of the Court of Appeals in *People v. Bayer*, 279 Mich.App. 49, 756 N.W.2d 242 (2008), that states that medical testimony is required in all prosecutions under MCL 750.52b(1)(f)(iv).

> The application for leave to appeal as cross-appellant is DENIED,

4

because we are not persuaded that the questions presented should now be reviewed by this Court. We REMAND this case to the Court of Appeals for consideration of the defendant's remaining issues.

People v. Baisden, 482 Mich. 1000, 756 N.W.2d 73 (2008)(Cavanagh, J., would grant leave to appeal).

On remand, the Michigan Court of Appeals adopted Judge Meter's dissent from the original opinion and affirmed petitioner's conviction. People v. Baisden, No. 269999, 2008 WL 4724327 (Mich. Ct. App. October 28, 2008).

The Michigan Supreme Court considered Baisden's application for leave and, in lieu of granting leave, vacated in part the Michigan Court of Appeals judgment and remanded the matter to the Michigan Court of Appeals for reconsideration of Baisden's sentencing-error claims that were addressed in Judge Meter's original dissenting opinion . People v. Baisden, 483 Mich. 975; 764 N.W.2d 250 (2009).

On remand, the Michigan Court of Appeals adopted Judge Meter's analysis of the sentencing issue and remanded petitioner's case for re-sentencing. People v. Baisden, No. 269999, 2009 WL 1913223 (Mich. Ct. App. July 2, 2009).

On remand, petitioner was re-sentenced to 2 years and 11 months to 15 years in prison.

Petitioner then filed a post-conviction motion for relief from judgment, which was denied. People v. Baisden, No. 05-003753 (Wayne County Circuit Court, June 24, 2010).  The Michigan appellate courts denied petitioner leave to appeal.

5

People v. Baisden, No. 300979 (Mich.Ct.App. August 30, 2011); lv. den. 491

Mich. 852, 808 N.W.2d 788 (2012).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied the right to have a neutral and unbiased judge preside over his trial. The judge's conduct also violated the Separation of Powers Clause.

II. Petitioner was denied due process of law where the Michigan Supreme Court held that expert medical testimony was unnecessary in the prosecutions brought under MCL 750.520(b)(1)(f)(iv) and then retroactively applied the decision to affirm Petitioner's conviction.

III. Where the prosecution failed to offer any evidence on one of the elements of the crime charged, the court erred reversibly in denying the motion for directed verdict.

IV. Petitioner was denied his right to a properly instructed jury in the following ways:

     a. Although there was no expert medical testimony, the court still gave the instruction consistent with MCL 750.520(b)(1)(f)(iv).

     b. The trial court refused to read the complete instruction regarding force and coercion used during a medical examination.

     c. In re-instructing the jury, the Court became an unsworn witness and invaded the province of the jury.

V. The Defendant was denied the effective assistance of counsel for the following reasons:

     a. Defense counsel failed to mount a defense which met all the charges brought against petitioner.

     b. Trial counsel failed to protect Dr. Baisden's right to remain silent and his privilege against self-incrimination

by placing him on the witness stand where the
prosecution could use him to shore up its proofs on
subsection (f)(iv).

c. Defense counsel failed to object to opinion testimony
from Officer Combs as to the credibility (sic)

d. Defense counsel failed to offer evidence which would
have substantiated the defense and also failed to
impeach the complainant.

VI. The state appellate court's decision denying Petitioner's motion
for new trial based on newly discovered evidence that the
complainant had perjured herself on a key issue was both an
unreasonable application of and contrary to clearly established
Supreme Court law.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be
granted with respect to any claim that was adjudicated on the merits
in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or
(2)      resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

7

Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

### III.  Discussion

#### A. Claim # 1.  The Judicial Bias and Separation of Powers claims.

Petitioner first alleges that he was denied his right to a neutral and unbiased judge and that the trial court judge violated the separation of powers clause by selecting a jury instruction that would most likely result in a conviction.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. See Bracy v. Gramley, 520 U.S. 899, 904-05 (1997).  However, to state a claim that a judge is biased, a defendant must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. United States v. Lowe, 106 F. 3d 1498, 1504 (6th Cir. 1997).  "Under this standard, '[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required.'" Getsy v. Mitchell, 495

F.3d 295, 311 (6th Cir.2007)(quoting Williams v. Anderson, 460 F.3d 789, 814

(6th Cir.2006)).  A judge is required to recuse himself or herself only where he

has actual bias or "a predisposition 'so extreme as to display clear inability to

render fair judgment.'" Johnson v. Bagley, 544 F. 3d 592, 597 (6th Cir.

2008)(quoting Liteky, 510 U.S. at 551).  In reviewing a judicial bias claim, a

federal habeas court should employ the initial presumption that the assigned trial

judge properly discharged his or her official duties. See Johnson v. Warren, 344

F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

    The trial court made an adverse ruling against petitioner by deciding to

read all five subsections of the statute, under which petitioner had been charged.

Trial counsel argued that the prior trial court's instructions did not include a

reading of subparagraph (iv) of the statute.  The trial court judge, finding that this

was a new trial with new proofs, ruled that it was not bound by the prior court's

jury instructions and chose to instruct the jury on all sections of the applicable

statute.  Petitioner also claims that the trial court read only a portion of the CJI2d

20.24 instructions.  These instructions were totally disregarded because they

repeated the instructions given by reading the statute. (Tr. February 24, 2006 pp.

11-19).  There is no record support of petitioner's claim that only a portion of the

CJI instructions were read.  Petitioner also claims that the trial court exhibited

bias when it denied his motion for a directed verdict.  However, the element of

the charge pertained to a general finding of force or coercion; it did not rely on a

specific definition of force or coercion as found in the statute. (Tr. February, 24, 2006, p. 82).

Petitioner merely points to unfavorable rulings by the judge in support of his judicial bias. Adverse rulings are not themselves sufficient to establish bias or prejudice which will disqualify a judge. Vliet v. Renico, 193 F. Supp. 2d 1010, 1016 (E.D. Mich. 2002); Hence v. Smith, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

Finally, petitioner alleges that the trial court demonstrated bias when it reinstructed the jury on the definition of coercion by explaining that under the statute, "sexual intercourse is a medically unethical or unacceptable practice." (Tr. February 27, 2006 p. 197).

A federal court in a habeas corpus proceeding must do more than find a jury instruction in a state criminal trial was erroneous to grant habeas relief. See Smith v. Anderson, 505 F. Supp. 642, 644 (E.D. Mich. 1980). The question on habeas review of jury instructions is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141,147 (1973). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991)(quoting Naughten, 414 U.S. at 147).

Petitioner's primary contention is that the trial court judge failed to

adequately respond to the jury's question pertaining to the element of coercion found in the applicable statue.  Where a jury, desiring additional instructions, makes explicit its difficulties, a trial judge should clear them away with concrete accuracy. Bollenbach v. United States, 326 U.S. 607, 612-13 (1946).  However, a trial court is also entitled to exercise its sound discretion in deciding how best to respond to inquiries made by a jury during its deliberations. See United States v. Brown, 276 F. 3d 211, 216 (6th Cir. 2002).  In addition, a trial judge may "recharge a jury to correct possible misunderstandings which could arise as a result of inadequately defining the elements constituting the crime charge...." Draughn v. Jabe, 803 F. Supp. 70, 76 (E.D. Mich. 1992)(quoting United States v. Oliver, 766 F. 2d 252, 254 (6th Cir. 1985)).

In the present case, the trial court judge initially informed the jury that petitioner could be convicted of CSC III if they found that petitioner committed an act that was medically unethical or unacceptable during the victim's medical examination.  (Tr. February 27, 2006 p. 185).  When the jury expressed confusion, the trial court judge re-read the section pertaining to coercion and the section pertaining to unethical or unacceptable behavior.  One of the jurors asked whether the act would be the same as rape and the judge conceded that penile penetration during a medical examination would not be considered ethical or acceptable.

On cross-examination, petitioner testified that sexual intercourse is

11

medically an unethical and an unacceptable practice.  (Tr. February 27, 2006, p. 81).  The trial court judge read a portion of the statue when reinstructing the jury and simply gave an example which petitioner admitted during cross-examination at trial.

Petitioner's related allegation that the trial court judge violated the separation of powers between branches of state government is not cognizable on habeas review because it raises an issue of state law. Austin v. Jackson, 213 F.3d 298, 302 (6th Cir. 2000).  "[A] federal court may not grant habeas relief based on 'a perceived error of state law.'" Id. (quoting Pulley v. Harris, 465 U.S. 37, 41 (1984)).  Furthermore, state officials are not required to follow their own procedural statutes and rules as a matter of federal due process. Sweeton v. Brown, 27 F. 3d 1162, 1165 (6th Cir. 1994)(en banc); See also Coleman v. Martin, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005).  Petitioner is not entitled to habeas relief on his judicial bias or separation of powers claims.

## B.  Claim # 2.  The ex-post facto/due process violation claim.

Petitioner next contends that the Michigan Supreme Court's interpretation of existing case law had an ex post facto judicial decision making effect which violated his right to due process.  Petitioner argues that in ruling that medical testimony was unnecessary when a medical act is so obviously unacceptable, the Michigan Supreme Court violated the case of Bouie v. City of Columbia, 378 U.S. 347, 351 (1964), in which the Supreme Court held that the retroactive

12

application of an unforeseeable state court interpretation of a criminal statute violates a defendant's right to due process.  Petitioner cites to <u>People</u> v. <u>Capriccioso</u>, 207 Mich.App. 100, 105; 523 N.W.2d 846 (1994), which relied on <u>People</u> v. <u>Thangavelu</u>, 96 Mich.App. 442; 292 N.W.2d 227 (1980), for the proposition that medical testimony is necessary and "the jury is not free to decide what is and is not prohibited." <u>Id</u>. at 105.

In <u>Thangavelu</u>, however, the Michigan Court of Appeals clearly stated that it would have agreed with the prosecutor's position that the act of cunnilingus was so obviously unethical and unacceptable that no medical testimony was necessary to so inform the jury, if the trial had been limited to the act of cunnilingus. <u>Id</u>. at 447-48.  In addition to cunnilingus, the <u>Thangavelu</u> jury was also permitted to consider evidence that the "pelvic examination included insertion of fingers into the complainant's vagina and rectum while she was on her hands and knees on the examination table." <u>Id</u>.  The court determined that the defendant was denied a fair trial without medical testimony because the trial court did not instruct the jury that the charge was limited to cunnilingus and to disregard other touchings or penetrations. <u>Id</u>.

Petitioner was on notice from the <u>Thangavelu</u> decision that when a case is strictly limited to such obvious acts that are medically unethical and unacceptable, and the trial court judge instructed the jury in that regard, medical testimony would not be required.  The trial court clearly relied on <u>Thangavelu</u> in

13

support of its decision. (Tr. February 27, 2006, pp. 191, 201.). Petitioner does not cite to any Michigan case decided before September 27, 2004 which holds that medical testimony is still required under the statute when the jury is instructed to disregard all other touchings or penetrations and the charged act is limited to cunnilingus or penile penetration.

The Michigan Supreme Court here did not entirely eliminate the requirement for medical testimony in 750.250b(1)(f)(iv) prosecutions. The decision merely carved out an exception that medical testimony is unnecessary when the act during a medical exam is obviously not medically ethical or acceptable, e.g., penile penetration, under common knowledge. Baisden, 482 Mich. at 1000. The Michigan Supreme Court's interpretation of the prior existing case law was not unforseen or indefensible. Furthermore, petitioner has provided no support for any theory that the federal constitution mandates advance notice prior to closing arguments of the jury instructions that will be given. See Banks v. Romanowski, No. 2006 WL 54427, * 2 (E.D.Mich. January 10, 2006).

Moreover, even if the decision amounts to a constitutional error, that error was harmless because the jury clearly rejected petitioner's claim of consent. Brecht v. Abrahamson, 507 U.S. 619 (1993). Petitioner's second claim is without merit.

14

**C.  Claim # 3.  The sufficiency of evidence claim.**

Petitioner next alleges that the trial court erred in denying his motion for a directed verdict when the prosecutor failed to offer evidence on one element of the crime.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318-19 (internal citation and footnote omitted) (emphasis in the original).

M.C.L.A. 750.520d(1)(b), the third-degree criminal sexual conduct statute, provides that force or coercion includes but is not limited to any of the circumstances listed in M.C.L.A. 750.520b(1)(f).  M.C.L.A 750.520b(1)(f) provides, in relevant part, that force or coercion includes:

15

(iv) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.

(v) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

Although petitioner frames his claim as a sufficiency of evidence claim, petitioner in actuality quarrels with the Michigan Supreme Court's holding that expert medical testimony is not necessary when the alleged sexual conduct is obviously an unethical and unacceptable medical treatment.

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).  State courts are the "ultimate expositors of state law." Mullaney v. Wilbur, 421 U.S. 684, 691 (1975).  What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. See Sanford v. Yukins, 288 F.3d 855, 862 (6th Cir. 2002).  Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as Jackson claims. Id. (citing Bates v. McCaughtry, 934 F.2d 99, 103 (7th Cir. 1991)).  This Court must therefore defer to the Michigan Supreme Courts's construction of the elements of state crimes. See Coe v. Bell, 161 F.3d 320, 347 (6th Cir. 1998).

The Michigan Supreme Court ruled in this case that for purposes of

16

determining whether a medical act was unethical or unacceptable, expert medical testimony is unnecessary when the act is obviously unethical or unacceptable.  This Court must defer to the Michigan Supreme Court's construction of the elements when interpreting the statute and therefore cannot grant habeas relief on a claim that the Michigan Supreme Court misinterpreted MCL 750.520b(1)(f)(iv).

### D.  Claim # 4.  The jury instruction claim.

Petitioner claims that the court improperly omitted the standard jury instructions and instructed the jury by reading a portion of the statute.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. Henderson v. Kibbee, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. Jones v. United States, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due

17

process violation. <u>Waddington</u> v. <u>Sarausad</u>, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. <u>Id</u>. at 191.

Moreover, in determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a substantial and injurious effect or influence on the jury's verdict. <u>See</u> <u>Hedgpeth</u> v. <u>Pulido</u>, 555 U.S. 57, 61-62 (2008); <u>California</u> v. <u>Ray</u>, 519 U.S. 2, 5 (1996).

Petitioner first claims that the trial judge erred in instructing the jury on a theory of force or coercion based on medically unethical or unacceptable treatment, without offering expert medical testimony to establish that petitioner's conduct was medically unethical.  The Michigan Supreme Court, however, held that expert medical testimony was not necessary to establish that petitioner's act of penile penetration was medically unethical or unacceptable.  Because the Michigan Supreme Court essentially found that it was correct to give this instruction under Michigan law, this Court must defer to that determination and cannot question it. <u>See</u> <u>Seymour</u> v. <u>Walker</u>, 224 F. 3d 542, 558 (6th Cir. 2000).

Petitioner next claims that the judge erred in failing to read the entire jury instruction included in CJI2d 20.24.  As respondent indicated in her answer, there is nothing in the record which shows that the judge gave only a partial instruction on CJI2d 20.24.  The trial court found the jury instructions to be

18

duplicative of the statute and chose to disregard them.  This claim is without merit.

Moreover, petitioner's claim that the CJI2d 20.24 instruction was "necessary so that the defendant-doctor is not convicted because he conducted an appropriate exam or convicted because all the jurors can't agree on what constitutes the criminal act" is without merit. (Habeas Brief, p.18).  The jury was clearly instructed to only consider the act of petitioner inserting his penis into the vagina of his patient, and to disregard any other touchings or penetrations that occurred during the examination. (Tr. February 27, 2006, p. 197).  Thus, the jurors were clearly informed that to convict petitioner, they would have to find beyond a reasonable doubt that he engaged in an act of forcible penile penetration.

Petitioner lastly contends that the judge gave unsworn testimony and invaded the province of the jury when re-instructing them.

Petitioner alleges that the instruction that sexual intercourse is a medically unethical or unacceptable practice equated to testimony by an unsworn witness that violated his Sixth Amendment right to confrontation.  Petitioner further claims that the judge's instruction directed a verdict of guilt. The jury, however, heard testimony from petitioner that sexual intercourse was not a medically accepted treatment. (Tr. February 27, 2006, p. 81).  Even if the judge erred in giving this instruction, any error was harmless in light of petitioner's own

19

admission that sexual intercourse was not a medically acceptable treatment.

Petitioner claimed that the victim consented to the sexual penetration that took place at the end of her gynecological exam.  The victim testified that she was taken by surprise and never consented to sexual penetration by petitioner while she was in the stirrups.  (Tr. February 22, 2006, pp. 42-46).  The trial court judge instructed the jury that the only act that was to be considered was the penile penetration.  Other evidence pertaining to petitioner trying to kiss the victim, putting his head near her breast, or the pinching of the victim's nipple, "and so forth," was not to be considered in the deliberations. (Tr. February 27, 2006, p. 192-193).  During cross-examination, petitioner testified in the affirmative that "[i]t is not medically acceptable treatment to have intercourse with a patient after a pap smear."  (Tr. February 27, 2006, p. 81).  Being that petitioner was a practicing gynecologist, not only would the act be obviously unethical and unacceptable as per the statute and applicable case law, petitioner testified that under the applicable medical standards, penetration of a patient would be considered an unethical and unacceptable practice.  Providing an instruction consistent with MCL 750.520(b)(1)(f)(iv) which refers to conduct which is medically recognized as unethical or unacceptable is consistent with the testimony provided at trial and did not have an injurious effect or influence on the jury's verdict.  Petitioner's fourth claim is without merit.

20

### E.  Claim # 5.  The ineffective assistance of counsel claim.

Petitioner alleges that trial counsel was ineffective by (1) failing mount a defense which met all the charges brought against him, (2) failing to protect his right to remain silent and his privilege against self-incrimination, (3) failing to offer evidence which would have substantiated the defense, and (4) failing to impeach the complainant.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. Id.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

In his fifth claim, petitioner contends that his trial counsel was ineffective

21

for failing to prepare to address section (iv) of the applicable statute, under which petitioner was charged.  Trial counsel brought a directed verdict at the close of the prosecutor's proofs addressing the lack of expert testimony to support a finding of coercion under section (iv) of the statute.  The trial court denied trial counsel's motion.  The statutory language pertaining to the charges brought alerted petitioner of various scenarios under which force or coercion could be established.  The sole factual basis upon which petitioner was charged consisted of one act (penile penetration) on the victim.  The relevant case law in effect at the time of petitioner's trial found that a sex act that is obviously so unethical or unacceptable (cunnilingus on a patient) need not be proven through expert medical testimony.  Petitioner has failed to show that counsel was not prepared at petitioner's trial.

Petitioner also alleges that trial counsel was ineffective for having him testify at trial.  Petitioner's defense to the charge rested on a claim of consent. Petitioner, along with his wife, believed that he could prevail in proving consent by testifying at trial.  Petitioner has a constitutional right to testify in his own defense and exercised that right.  Although petitioner's testimony was not believed by the jury, this could not have been foreseen by trial counsel. Furthermore, petitioner considered the advice of trial counsel and three other attorneys before making his decision to testify.  Petitioner's trial counsel was not ineffective for putting her client on the stand when it was petitioner's decision to

22

testify.

Petitioner also claims that trial counsel failed to present other evidence in his defense.  Petitioner first claims that trial counsel failed to mention of a significant number of people in the waiting room.  The record reflect that this information was produced at trial. (Tr. February 22, 2006 pp. 133; 111 pp. 21-22, 24, 89, 91).  Petitioner also claims that trial counsel failed to bring up why the victim did not shout out or bang the walls.  This issue was also addressed at petitioner's trial (Tr. February 22, 2006 pp. 151, 169, 172, 182).  This claim is without merit.

Petitioner's claim that counsel was ineffective for failing to bring out a comment made by a friend of the victim regarding petitioner being divorced would not have changed the outcome of petitioner's trial in light of the overwhelming evidence produced against his theory of consent.  The victim clearly testified that she was taken by surprised and never consented to sexual intercourse with petitioner.  This claim is also without merit.

Petitioner further alleges in his petition that counsel was ineffective for failing to object to certain testimony of Officer Otis Combs, the officer in charge of the case, in which he claims that the officer improperly commented on and bolstered the victim's credibility and allegedly gave expert testimony without being declared an expert by the court.  Petitioner, however, fails to offer any facts in support of this claim or any argument as to how Officer Combs'

23

testimony was improper or how he was prejudiced by this testimony.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. See Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998).  Because this part of petitioner's ineffective assistance of counsel claim is conclusory, petitioner is not entitled to relief.

Petitioner also claims that trial counsel failed to impeach the victim with an inconsistent statement made during petitioner's first trial, pertaining to the victim signing a retainer agreement for civil charges to be brought against petitioner and for failing to ask the victim whether she believed that petitioner was divorced.

Trial counsel, however, did impeach the victim with the fact that she had consulted a civil attorney with regard to the incident.  Counsel also impeached the victim with the fact that there were several receptionists working that day, as well as people in the waiting room, but that the victim did not inform them or a security guard on the premises about the sexual assault.  Counsel further elicited from the victim that she never screamed out for help, banged on the walls, or attempted to run out during or after the sexual assault.  Undisclosed impeachment evidence is considered cumulative "when the witness has already been sufficiently impeached at trial." Davis v. Booker, 589 F. 3d 302, 309 (6th Cir. 2009)(quoting Brown v. Smith, 551 F. 3d 424, 433-34 (6th Cir. 2008)).  Because the victim's credibility already been impeached, petitioner was not prejudiced by

counsel's failure to impeach her with cumulative impeachment evidence concerning whether she believed that petitioner was divorced. Id. This claim is meritless.

### F.  Claim # 6.  The newly discovered evidence claim/actual innocence.

In his sixth claim, petitioner alleges that he has newly discovered evidence that he is actually innocent of this crime.  Petitioner also claims that the trial court's denial of his motion for a new trial based on newly discovered evidence was an unreasonable application of clearly established Supreme Court precedent.

"A claim of actual innocence based upon newly discovered evidence is not grounds for federal habeas relief." Hence v. Smith, 37 F. Supp. 2d 970, 980 (E.D. Mich 1999).  "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact." Herrera v. Collins, 506 U.S. 390, 400 (1993).  A claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. Monroe v. Smith, 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001).  Petitioner's claim that he has newly discovered evidence of his innocence does not state a claim upon which habeas relief can be granted. See Johnson v. Hofbauer, 159 F. Supp. 2d 582, 606 (E.D. Mich. 2001).

25

In any event, petitioner's newly discovered evidence that petitioner seeks to introduce would merely be used to impeach the credibility of the victim.  The mere existence of impeaching evidence does not warrant a new trial on a habeas claim of actual innocence based upon newly discovered evidence. Johnson v. Hofbauer, 159 F. Supp. 2d at 606.  New evidence which is merely cumulative or impeaching is not an adequate basis for a new trial. Mesarosh v. United States, 352 U.S. 1, 9 (1956).  Petitioner is not entitled to habeas relief on his sixth claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[2] 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v.

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

McDaniel, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. at 327.  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-37.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. See Millender v. Adams, 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. See Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore,

27

an appeal could be taken in good faith and petitioner may proceed in forma pauperis on appeal. Id.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to appeal in forma pauperis.

Date:   September 3, 2014                         s/Marianne O. Battani_____
                                                 MARIANNE O. BATTANI
                                                 United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 3, 2014.

                                                 s/ Kay Doaks_____
                                                 Case Manager


28